**AMERICAN MAIL LINE, LTD.,**
Defendant-Appellant,

v.

**Jack WEAVER, Plaintiff-Appellee.**

No. 23083.

United States Court of Appeals
Ninth Circuit.

March 6, 1969.

Rehearing Denied April 25, 1969.

William F. White (argued) of White, Sutherland & Gilberston, Portland, Or., for appellant.

Raymond J. Conboy (argued) of Pozzi, Wilson & Atchison, Portland, Or., for appellee.

Before HAMLEY, MERRILL, and HUFSTEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge:

American Mail Line, Ltd. ("American"), appeals from a judgment awarding $22,276.46 damages to Weaver, a longshoreman, for personal injuries sustained as a result of the unseaworthiness of American's vessel. American claims error in two respects: (1) The District Court improperly presented to the jury Weaver's medical expenses and earning losses, and (2) the damages awarded were excessive. Federal jurisdiction was based on diversity of citizenship.

The parties before trial had stipulated that the amount of Weaver's wage loss was $2,412.84 during the period of his claimed disability and that medical expenses totaling $1,375.90 had been paid on his behalf.

American proposed that the jury be instructed to disregard all of the medical expenses because "all of such medical treatment and hospitalization was and will be furnished by [American]' under its obligations imposed upon it by the Longshoremen's & Harbor Workers' Act" (33 U.S.C. § 901 et seq.) and that the jury should be further instructed that it must set off from Weaver's total wage loss of $2,412.84 compensation bene-

fits paid by American to Weaver in the sum of $1,347.64.

The District Court refused American's proposed instructions on the ground that they would "bring in another system of compensation into this proceeding which could only serve to confuse the jury." The court excluded all evidence of American's payments to or on behalf of Weaver and told the jury that if it found that Weaver was entitled to recover damages, his special damages were $1,375.90 medical expenses and $2,412.84 lost earnings. After the jury returned a general verdict for $25,000, the District Court deducted the $1,375.90 medical expenses American had paid and the $1,347.64 compensation benefits also paid, and gave judgment for $22,276.46.

Weaver did not seek and was not given any double recovery. (Shaver Transportation Co. v. Chamberlain (9th Cir. 1968) 399 F.2d 893; Grace Line, Inc. v. Kanton (9th Cir. 1966) 366 F.2d 510.) Both parties agree that the District Court's method of handling the matter presented Weaver's case in a warmer light to the jury than would American's, with the obvious result that Weaver approves and American disapproves of the District Court's technique.

We think the District Court's resolution of the problem was right, because that procedure most nearly comports with the rationale of the United States Supreme Court in Reed v. The S. S. Yaka (1963) 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448. In *Yaka*, as in this case, the personal injury claim was presented in a two-party setting instead of the more common three-party action.[1] The injured longshoreman was employed, not by an independent stevedoring company, but by the shipowner. In *Yaka* the Court held that a longshoreman could file a libel in rem against his employer's vessel to recover for injuries he sustained while loading the vessel. The Court reasoned that it would be harsh and incongruous "to distinguish between liability to longshoremen injured under precisely the same circumstances because some draw their pay directly from a shipowner and others from a stevedoring company doing the ship's service." (373 U.S. at 415, 83 S.Ct. at 1353.)

■ The Court's concern in *Yaka* is preserving parity of treatment among injured longshoremen. Had Weaver been employed by an independent stevedoring company instead of by American he would have presented evidence of the full amount of his special damages, the jury would have been accordingly instructed, and the offsets would have been made after the verdict was returned. (*Cf.* Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., *supra*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.) The same procedure should be and was followed here.

■ We also reject American's claim about the size of the verdict. From our review of the evidence we cannot say that the damages were excessive. (Affolder v. New York, Chicago & St. Louis R. R. Co. (1950) 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683; Bradley Mining Co. v. Boice (9th Cir. 1951) 194 F.2d 80.)

The judgment is affirmed.

1. The common form is an action by the injured longshoreman against the shipowner founded on unseaworthiness, and the shipowner's third-party claim for indemnity against the longshoreman's immediate employer, the independent stevedoring company. The stevedore bears the ultimate loss, despite the provision of the Longshoremen's and Harbor Workers' Act making the compensation therein provided the exclusive remedy against the longshoreman's employer. Double recovery against the employer is avoided by setting off against his recovery the compensation payments made by the employer to the longshoreman. (E. g., Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp. (1956) 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.) *See generally*, Proudfoot, "The Tar Baby": Maritime Personal-Injury Indemnity Actions, 20 Stan.L.Rev. 423 (1968).